VENISEK and wife, Respondents, v. DRASKI and wife, Appellants.

*April 12—May 9, 1967.*

40

42

For the appellants there was a brief and oral argument by *William F. Scholl* of Milwaukee.

For the respondents there was a brief by *La France, Thompson, Greenquist, Evans & Dye* and *Kenneth L. Greenquist* and *Adrian P. Schoone,* all of Racine, and oral argument by *Kenneth L. Greenquist.*

CURRIE, C. J.   The summary judgment entered herein for specific performance is defective in that it requires defendant purchasers to pay the balance of the agreed purchase price without any provision requiring plaintiffs to execute a warranty deed conveying the premises to defendants and for the delivery of such deed upon defendants making the payment required by the judgment.[1]

The deficiency in the judgment points up the principal contention advanced by defendants on this appeal, *i.e.,* that the contract should not be enforced against them because plaintiffs are not in a position to convey marketable title.  As we view the case, not only does the record before us indicate that plaintiffs are probably unable to convey marketable title, but the very act of conveying the premises described in the contract may of itself constitute an illegal act which a court of equity should not decree. We say this because of facts stated in Judge ROBERT W. LANDRY'S memorandum decision, in a certiorari proceeding instituted in the circuit court for Milwaukee county by plaintiff Frank Venisek against the city of Franklin's zoning board of appeals.  The proceeding sought review of a denial by the board of Venisek's application for a variance.  The city's zoning ordinance alluded to in Judge LANDRY'S decision requires a minimum frontage of 120 feet in the use district in which the premises are located.

At the outset we are confronted with a procedural difficulty.  Nowhere do we find in the record presented on the motion for summary judgment, on the motion to vacate the judgment, or in the briefs and appendix on this appeal, a copy of the city of Franklin's zoning ordinance.  Thus all we have before us with respect to the provisions of such zoning ordinance are the aforementioned facts stated in Judge LANDRY'S decision.  Plaintiffs

---

[1] See 18 Am. Jur., Pleading and Practice Forms, p. 783, Form 18:1221; 5 Winslow's Forms of Pleading and Practice, p. 526, sec. 7014; *Andrews v. Fluekiger* (1919), 168 Wis. 348, 170 N. W. 256; *Harris v. Halverson* (1927), 192 Wis. 71, 77, 211 N. W. 295.

contend that even Judge LANDRY'S decision is not properly before us.

Defendant Eugene J. Draski made and filed an affidavit in opposition to plaintiffs' motion for summary judgment. The only portions of the affidavit which have any relevancy to the issues of merchantable title and illegality are the following two paragraphs:

"5. The Plaintiff admits maintaining and attempting to sell non-conforming real estate (See Chapter 60 of Code of Ordinances, City of Franklin) herein to the Defendants, as appears upon the record of the City of Franklin and late by Plaintiffs' appeal in Case No. 328–723 in this Court upon a Writ of Certiorari, which was denied by Honorable ROBERT W. LANDRY on the 21st day of April, 1965, and whose decision is incorporated herein by reference.
"6. The Defendants believe, on good cause, the Plaintiffs are unable to convey good merchantable title and have not so demonstrated."

The record transmitted to the clerk of this court pursuant to sec. 251.29, Stats., did not contain Judge LANDRY'S memorandum decision. Approximately two months later a supplemental return was made of Judge LANDRY'S decision to our clerk by the clerk of the circuit court for Milwaukee county. Plaintiffs argue that the attempt to incorporate Judge LANDRY'S decision into the Draski affidavit by reference was a nullity because no copy thereof was attached as required by sec. 270.635 (2).

While failure to attach a copy of the memorandum decision to the affidavit constituted noncompliance with sec. 270.635 (2), Stats., the question arises as to whether the attempted incorporation was sufficient to call to Judge DRECHSLER'S attention the existence of the decision and make it incumbent upon him to take judicial notice thereof. This court apparently has not heretofore passed on the question of whether it is proper for a trial court to resort to judicial notice when considering a motion for

summary judgment. There are, however, numerous federal decisions which indicate that judicial notice may be resorted to at a summary-judgment proceeding.[2] Also there is a decision by this court and numerous decisions from other jurisdictions wherein courts have judicially noticed certain matters in passing upon a demurrer.[3]

We consider apposite the following statement by this court in *Swan Boulevard Development Corp. v. Cybulski:* [4]

"The trial court took judicial notice of all prior proceedings and determinations made by the other circuit judges of the several branches of the circuit court for Milwaukee county relating to the issues to the identical parcel of real estate, the subject of this litigation. This court likewise takes judicial notice thereof insofar as such prior proceedings and determinations are germane to a determination of the issues."

While the court was there concerned with a trial on the merits and not a motion for summary judgment we deem that immaterial. Summary judgment is a "drastic remedy" [5] and it necessarily follows that, if defendants would be entitled to have had the circuit court take judicial notice of Judge LANDRY'S decision on a trial on the merits,

[2] See *e.g., Fletcher v. Evening Star Newspaper Co.* (D. C. Cir. 1942), 133 Fed. (2d) 395; *Sieb's Hatcheries, Inc., v. Lindley* (D. C. Ark. 1952), 108 Fed. Supp. 415, affirmed (8th Cir. 1954), 209 Fed. (2d) 674; *Lark v. West* (D. C. D. C. 1960), 182 Fed. Supp. 794, affirmed (D. C. Cir. 1961), 289 Fed. (2d) 898, certiorari denied, 368 U. S. 865, 82 Sup. Ct. 114, 7 L. Ed. (2d) 63; *E. H. Marhoefer, Jr., Co. v. Mount Sinai, Inc.* (D. C. Wis. 1961), 190 Fed. Supp. 355.

[3] *Chris Schroeder & Sons Co. v. Lincoln County* (1943), 244 Wis. 178, 11 N. W. (2d) 665. See also *Fleming v. Anderson* (1948), 187 Va. 788, 48 S. E. (2d) 269; *Frank v. Wilson & Co.* (Del. 1943), 32 Atl. (2d) 277; 9 Wigmore, Evidence (3d ed.), p. 570, sec. 2579.

[4] (1961), 14 Wis. (2d) 169, 171, 109 N. W. (2d) 671.

[5] *Ryan v. Berger* (1949), 256 Wis. 281, 285, 40 N. W. (2d) 501; see also, *Skyline Construction, Inc., v. Sentry Realty, Inc.* (1966), 31 Wis. (2d) 1, 5, 141 N. W. (2d) 909, and numerous authorities cited at page 5.

defendants should be accorded the same right upon application by plaintiffs for summary judgment. We conclude, therefore, that Judge LANDRY'S decision is properly before us on this appeal.

We garner the following facts from the decision: In 1946 plaintiff Frank Venisek purchased a parcel of land having a frontage of 200 feet on South One Hundred Twenty-Fourth street and a depth of 650 feet. In 1952 a home was erected on the north portion and in 1954 a store was built 41 feet south of the house which store is presently a beer depot and delicatessen. In 1959 the city of Franklin zoned Venisek's property A-1 Agricultural. When so zoned the store constituted a nonconforming use. The A-1 Agricultural use district established a minimum "width" (apparently frontage) of 300 feet for all parcels except those used for residential purposes, in which case 120 feet was permitted. In June, 1963, Venisek made two appearances before the city planning commission seeking permission to divide off the south 80 feet of his land on which the store was located. In October, 1963, he contracted to sell the 80 foot portion containing the store to the Draskis for $26,900. The minutes of the city planning commission for November 24, 1964, contained the following entry:

" 'It was moved by Mr. Starck, seconded by Ald. Butkowski that the request of Frank Veninsek [sic] to make a lot division at 10506 S. 124 St. NW ¼ Sec. 31, T5, R21E) be denied because one of the proposed lots would not meet the minimum lot width requirement (120 ft.) Motion carried.' "

Thereafter Venisek timely appealed such denial to the city zoning board of appeals which denied the requested variance after a hearing on December 9, 1965. A rehearing took place before the board on February 3, 1965, and again the variance was denied.

Upon these facts Judge LANDRY denied certiorari on the ground that the zoning board of appeals had "not

exceeded their authority to act according to their best judgment in denying to the petitioner the variance requested. . . ."

The pleadings reveal that the land contract, which the instant suit seeks to specifically enforce, was preceded by a preliminary purchase agreement entered into between the parties in October, 1963. The preliminary purchase agreement provided:

"The seller shall, upon payment of the purchase price, convey the property by good and sufficient warranty deed, or other conveyance provided herein, free and clear of all liens and encumbrances, excepting: Municipal and *Zoning Ordinances* and Recorded Easements for Public Utilities: Recorded Building Restrictions: . . ." (Emphasis supplied.)

The subsequent land contract omits the zoning ordinance exception contained in the preliminary purchase agreement.[6] The preliminary purchase agreement was merged into, and superseded by, the land contract.[7] Even if this were not so, such an exception ought not extend to a situation where as a result of the conveyance called for in the contract of purchase and sale the title would be unmarketable as a result of a zoning law violation which the purchaser would be powerless to remedy.[8]

---

[6] Zoning ordinances *per se* do not constitute encumbrances or defects in title. *Brunke v. Pharo* (1958), 3 Wis. (2d) 628, 629, 89 N. W. (2d) 221; *Lasker v. Patrovsky* (1953), 264 Wis. 589, 60 N. W. (2d) 336; *Miller v. Milwaukee Odd Fellows Temple* (1932), 206 Wis. 547, 240 N. W. 193; *Kend v. Herbert Finance Co.* (1933), 210 Wis. 239, 246 N. W. 311 (restrictions created by zoning law enacted after execution of land contract held not "encumbrances" within land contract). See also Kucirek & Beuscher "Wisconsin's Official Map Law" 1957 Wisconsin Law Review, 176, 201, *et seq.*

[7] *Fun-N-Fish, Inc., v. Parker* (1960), 10 Wis. (2d) 385, 103 N. W. (2d) 1.

[8] An existing violation of a zoning ordinance may render title unmarketable. *Moyer v. DeVincentis Construction Co.* (1933), 107 Pa. Super. 588, 164 Atl. 111; Comment, Public Land Use Regulations and Marketability of Title, 1958 Wisconsin Law Review,

Pomeroy, Specific Performance of Contracts (3d ed.), p. 926, sec. 450, states that equity will not compel specific performance where a defect in title is substantial and material. Similarly, 4 Pomeroy, Equity Jurisprudence (5th ed.), p. 1051, sec. 1407, states:

"It is therefore a familiar rule that the vendor cannot force performance upon the purchaser unless he is able to give a good title to the subject matter."

Also in 49 Am. Jur., Specific Performance, pp. 111, 112, sec. 95, it is said:

"If the vendor is unable to convey a clear and marketable title . . . specific performance will not be granted."

In the instant case, if the zoning ordinance imposes a minimum frontage requirement of 120 feet, the very conveyance by plaintiffs to defendants would constitute an illegal act. Thus, in addition to an unmarketable title, a court would be in the position of compelling the performance of an illegal act if it granted specific performance of the contract.[9] A fixed and well-settled rule is that equity will not enforce the execution of an illegal transaction. In such cases equity usually leaves the parties to such a transaction where it finds them.[10] As

128, 131; 2 Patton, Titles (2d ed.), p. 568, sec. 606 and 1965 pocket part; 3 American Law of Property (1952 ed.), p. 140, sec. 11.49; 1 Flick, Abstract and Title Practice (1958), p. 42, sec. 31, n. 32; Dunham, Effect on Title of Violations of Building Covenants and Zoning Ordinances, 27 Rocky Mt. Law Review (1955), 255; Passero, Effect of Zoning Ordinances and Violations Upon Marketability of Property, 24 Albany Law Review (1960), 167.

[9] An agreement or transaction may be illegal where either the formation or performance thereof is prohibited. See 2 Restatement, Contracts, p. 1087, sec. 580, which relates to agreements in violation of a statute.

[10] See 30 C. J. S., Equity, p. 915, sec. 63. As early as 1849 this court stood by such principle, in *Swartzer v. Gillett* (1849), 2 Pinney 238, 1 Chandler 207.

stated in 3 Pomeroy, Equity Jurisprudence (5th ed.), p. 645, sec. 929:

". . . a court of equity does not aid a party to enforce an illegal transaction which is still executory . . . ."

Plaintiffs contend that defendants are barred from asserting the unmarketability of title due to the minimum frontage requirement of the zoning ordinance by their entering into the land contract on April 27, 1964, assuming and retaining possession of the land, and making payments extending into October, 1964. In support of this contention plaintiffs cite *Osterloh v. Osterloh,*[11] *Chandler v. Gault*[12] and *McIndoe v. Morman.*[13] We place no significance in the fact that defendants entered into the land contract in April, 1964, because the final action of the city planning commission on the application of plaintiff Frank Venisek for a variance did not take place until November 24, 1964. Defendants continued possession of the premises without an attempt to rescind until plaintiffs instituted the instant action, however, is more troublesome.[14] We conclude that defendants by their acts did not waive the illegality that would result from the court requiring the specific performance of the contract which necessarily must include the requirement that plaintiffs convey to defendants the premises with a frontage of only 80 feet.

Because of defendants' failure to set forth a copy of the applicable provisions of the city zoning ordinance in the affidavit opposing plaintiffs' motion for summary judgment, or otherwise making the same available to the trial court, we cannot hold it was error to grant plaintiffs'

[11] (1939), 231 Wis. 319, 285 N. W. 742.
[12] (1923), 181 Wis. 5, 194 N. W. 33.
[13] (1870), 26 Wis. 588, 590, 591.
[14] Defendants' answer does demand rescission in the event plaintiffs fail to show merchantable title.

motion for summary judgment. However, the statements in Judge LANDRY'S memorandum decision with respect to what the ordinance provided relative to minimum frontage causes us to conclude that the summary judgment should be reversed in the interest of justice. Furthermore, we are of the opinion that on remand the issues explored herein should be resolved by trial on the merits rather than on a renewed application for summary judgment. The order appealed from should be affirmed.

There remains the question of what judgment should be entered in the circuit court in the event it is found that the zoning ordinance does require a minimum frontage of 120 feet for plaintiffs' premises so as to prevent them from legally conveying to defendants the 80 foot parcel described in the land contract.

The general rule is that both at law and in equity a court will not aid either party to an illegal agreement, whether executory or executed, but leaves the parties where it finds them.[15] There are exceptions to this rule. One is where the parties are not in *pari delicto*.[16] Another is where there is a slight illegality and recovery of anything transferred is permitted if necessary to prevent a harsh forfeiture.[17] We deem this latter exception ought to be extended to cover the instant case where public

[15] 17 C. J. S., Contracts, p. 1188, sec. 272; 30 C. J. S., Equity, p. 915, sec. 63; 6 Williston, Contracts (rev. ed.), p. 5001, *et seq.*, sec. 1762; 2 Restatement, Contracts, pp. 1109, 1110, sec. 598; *Swartzer v. Gillett, supra,* footnote 10.

[16] *Schaefer v. Weber* (1953), 265 Wis. 160, 169, 60 N. W. (2d) 696; *Stevens v. Berger* (1949), 255 Wis. 55, 57, 37 N. W. (2d) 841; *Badger Coal & Coke Co. v. Sterling Midland Coal Co.* (1923), 180 Wis. 79, 81, 192 N. W. 461; 5 Williston, Contracts (rev. ed.), p. 4568, sec. 1631; 6A Corbin on Contracts, p. 822, *et seq.*, sec. 1536; 2 Restatement, Contracts, p. 1111, sec. 599.

[17] 2 Restatement, Contracts, p. 1115, sec. 600; *Ryan v. KVL, Inc.* (1939), 198 Wash. 459, 469, 88 Pac. (2d) 836; *Illinois Bankers Life Assurance Co. v. Brydia* (1937), 180 Okla. 436, 437, 70 Pac. (2d) 73.

policy would best be served by restoring the *status quo* which existed prior to the attempted purchase and sale.

This being an action for specific performance the circuit court sits as a court of equity and should be able to fashion relief which will be equitable to both plaintiffs and defendants. If the payments heretofore made by defendants do not greatly exceed the fair rental value of the store premises during the time of defendants' occupancy, one solution would be to hold that each cancels out the other, and to decree rescission on that basis.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings consistent with this opinion. Order affirmed.